1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**

9             **CENTRAL DISTRICT OF CALIFORNIA**

10                 **WESTERN DIVISION**

11

12  PATRICK STRAW,              )      No. EDCV 03-0863 CW
                                )
13              Plaintiff,      )      DECISION AND ORDER
            v.                  )
14                              )
    JO ANNE B. BARNHART,        )
15  Commissioner, Social Security )
    Administration,             )
16                              )
                Defendant.      )
17  _____ )

18

19      The parties have consented, under 28 U.S.C. § 636(c), to the

20  jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks

21  review of the Commissioner's denial of disability benefits.  As

22  discussed below, the court finds that the Commissioner's decision

23  should be reversed and this matter remanded for further proceedings.

24                    **I.   BACKGROUND**

25      Plaintiff Patrick Straw was born on January 2, 1960, and was

26  forty-three years old at the time of his administrative hearing.

27  [Administrative Record "AR" 37.]   He has a ninth grade education and

28  past work experience as a laborer in a cement factory and a drywall

                              1

finisher. [AR 12.]  Plaintiff claims disability on the basis of mental retardation, a back impairment, illiteracy and depression. [Joint Stipulation "JS" 2.]

## II.    PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on July 25, 2003, and filed on July 31, 2003.  On December 11, 2003, defendant filed plaintiff's Administrative Record ("AR").  On June 1, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.    PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income on October 30, 2001, alleging disability since February 15, 2001.  [JS 1.]  The application was denied initially and upon reconsideration. [Id.]  An administrative hearing was held on February 25, 2003, before Administrative Law Judge ("ALJ") Helen E. Hesse.  [Transcript, AR 36.] Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Jose Malancharuvil, and vocational expert Alan Ey.  [Id.]  The ALJ denied benefits on April 21, 2003. [Decision, AR 16.]  When the Appeals Council denied review on May 30, 2003, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the

1   court determines that a finding is based on legal error or is not

2   supported by substantial evidence in the record, the court may reject

3   the finding and set aside the decision to deny benefits.  See Aukland

4   v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v.

5   Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240

6   F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094,

7   1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.

8   1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada

9   v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

10       "Substantial evidence is more than a scintilla, but less than a

11  preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence

12  which a reasonable person might accept as adequate to support a

13  conclusion."  Id.  To determine whether substantial evidence supports

14  a finding, a court must review the administrative record as a whole,

15  "weighing both the evidence that supports and the evidence that

16  detracts from the Commissioner's conclusion."  Id.  "If the evidence

17  can reasonably support either affirming or reversing," the reviewing

18  court "may not substitute its judgment" for that of the Commissioner.

19  Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

20                          **V.  DISCUSSION**

21       To be eligible for disability benefits a claimant must

22  demonstrate a medically determinable impairment which prevents the

23  claimant from engaging in substantial gainful activity and which is

24  expected to result in death or to last for a continuous period of at

25  least twelve months.  Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

26  721; 42 U.S.C. § 423(d)(1)(A).

27

28

                                   3

1

## V. <u>DISCUSSION</u>

2

### A.   THE FIVE-STEP EVALUATION

3      To be eligible for disability benefits a claimant must

4 demonstrate a medically determinable impairment which prevents the

5 claimant from engaging in substantial gainful activity and which is

6 expected to result in death or to last for a continuous period of at

7 least twelve months.  <u>Tackett</u>, 180 F.3d at 1098; <u>Reddick</u>, 157 F.3d at

8 721; 42 U.S.C. § 423(d)(1)(A).

9      Disability claims are evaluated using a five-step test:

10          Step one: Is the claimant engaging in substantial
          gainful activity?  If so, the claimant is found not
11          disabled.  If not, proceed to step two.
          Step two: Does the claimant have a "severe" impairment?
12          If so, proceed to step three.  If not, then a finding of not
          disabled is appropriate.
13          Step three: Does the claimant's impairment or
          combination of impairments meet or equal an impairment
14          listed in 20 C.F.R., Part 404, Subpart P, Appendix 1?  If
          so, the claimant is automatically determined disabled.  If
15          not, proceed to step four.
          Step four: Is the claimant capable of performing his
16          past work?  If so, the claimant is not disabled.  If not,
          proceed to step five.
17          Step five: Does the claimant have the residual
          functional capacity to perform any other work?  If so, the
18          claimant is not disabled.  If not, the claimant is disabled.

19
<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u>
20
April 9, 1996); <u>see</u> <u>also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107
21
S. Ct. 2287, 96 L. Ed. 2d 119 (1987); <u>Tackett</u>, 180 F.3d at 1098-99; 20
22
C.F.R. § 404.1520, § 416.920.  If a claimant is found "disabled" or
23
"not disabled" at any step, there is no need to complete further
24
steps.  <u>Tackett</u>, 180 F.3d 1098; 20 C.F.R. § 404.1520.
25
     Claimants have the burden of proof at steps one through four,
26
subject to the presumption that Social Security hearings are non-
27
adversarial, and to the Commissioner's affirmative duty to assist
28

4

claimants in fully developing the record even if they are represented by counsel.  <u>Tackett</u>, 180 F.3d at 1098 and n.3; <u>Smolen</u>, 80 F.3d at 1288.  If this burden is met, a <u>prima facie</u> case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers.  <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B.  THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 15, 2001 (step one), that plaintiff had "severe" musculoskeletal impairments (step two), and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three).  [AR 12-13.] The ALJ found that plaintiff did not have the RFC to perform his past relevant work as a laborer (step four) but that he was capable of performing various light-level jobs (step five). [AR 15.]  Thus, the ALJ concluded that plaintiff was not "disabled" as defined by the Social Security Act.

**C.  PLAINTIFF'S PRESENT CLAIMS**

Plaintiff makes several claims challenging the ALJ's decision, three of which warrant a remand for further proceedings.  First, the

---

[1]  Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989).  Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations.  <u>Penny v. Sullivan</u>, 2 F.3d 953, 958 (9th Cir. 1993); <u>Cooper</u>, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a©).  Pain may be either an exertional or a nonexertional limitation.  <u>Penny</u>, 2 F.3d at 959; <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a©).

5

ALJ erred in making an RFC determination that adopted the opinion of the medical expert but contradicted the findings of an examining doctor and two state agency physicians.  Second, the ALJ did not adequately address whether plaintiff suffered from mental retardation which met the requirements of the "Listings."  Third, the ALJ did not completely evaluate the opinions of plaintiff's treating physicians.

**D.   THE ALJ'S USE OF THE MEDICAL OPINIONS TO ASSESS PLAINTIFF'S RFC**

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the claimant (non-examining physicians).  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating physician is given deference because he is employed to cure and has a greater opportunity to know and observe the patient as an individual.  <u>Spraque v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987).  The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician.  <u>Lester</u>, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons supported by substantial evidence in the record to reject the contradicted opinion of an examining physician. Id. at 830-31.

Here, the record reflects that an examining psychologist, Dr. Clifford Taylor, administered several tests and concluded that plaintiff could "complete simple tasks" while demonstrating "mild impairment on multi-faceted tasks or tasks involving sustained

6

concentration." [AR 193.]  Additionally, two state agency psychiatrists, Dr. Michael Skopec and Dr. Ernest Giraldi, reviewed the record and determined that plaintiff had the mental RFC to "complete simple tasks." [AR 228.]

In assessing plaintiff's RFC, however, the ALJ adopted the conclusions of the medical expert, Dr. Malancharuvil, who testified that plaintiff should be restricted to jobs "that are consistent with his intellectual abilities, [which] are moderately complex tasks, mostly physical....[w]ith up to four or five steps of instructions in a habituated setting." [AR 66.]  Based on this testimony, the ALJ determined that plaintiff had the RFC to perform a narrow range of light work, including, in relevant part, "work activity requiring no reading or writing with the exception of one-word notations, work involving four to five steps and no work requiring constant changes to challenge the claimant's work abilities."[2] [AR 13.]  Based on this RFC, vocational expert Ey testified that plaintiff could perform various jobs, including electronics assembler, hand packager and small products assembler. [AR 15, 71-72.]

The ALJ's reliance on the medical expert's testimony to determine that plaintiff had the RFC to perform these jobs does not satisfy the Ninth Circuit standards with regard to the evaluation of medical evidence.  While acknowledging the opinions of Drs. Taylor, Skopec and Giraldi in her opinion, the ALJ adopted Dr. Malancharuvil's RFC

[2]   The remainder of plaintiff's RFC included the ability to lift and/or carry twenty pounds occasionally and ten pounds frequently, the ability to sit, stand and/or walk six hours out of a given eight-hour period provided changes in positions at normal workday breaks, and no work requiring the use of ladders, ropes or scaffolds or work requiring more than the occasional climbing of stairs, bending, balancing, stooping, kneeling, crouching or crawling. [AR 13.]

1   assessment that plaintiff could complete moderately complex tasks
2   without any specific explanation of reasons for distinguishing or
3   discounting the other doctors' opinions that plaintiff was mentally
4   capable of completing "simple tasks."  Under the Ninth Circuit rule,
5   the ALJ was required to provide at least specific and legitimate
6   reasons for accepting Dr. Malancharuvil's apparently less limited RFC
7   assessment.

8        Furthermore, Dr. Malancharuvil's opinion is unsupported by the
9   medical record, as there is no other evidence that plaintiff is
10  capable of performing "moderately complex tasks."  Thus, Dr.
11  Malancharuvil's opinion regarding plaintiff's limitations must be
12  discounted.  Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.
13  1984)(report of a non-treating, non-examining physician should be
14  discounted and is not substantial evidence when contradicted by all
15  other evidence in the record).  Because Dr. Malancharuvil's RFC
16  assessment was integral to the VE's testimony about what other jobs
17  plaintiff could perform,[3] further proceedings are necessary to
18  evaluate plaintiff's ability to make a vocational adjustment and

19

20      [3]  The VE testified that plaintiff could perform jobs such as
    electronics assembler, hand packager and small products assembler.
21  The government designates each of these occupations with Reasoning
    Level 2, which requires, in part, the ability to "apply commonsense
22  understanding to carry out detailed but uninvolved written or oral
    instructions." U.S. Dep't of Labor, Dictionary of Occupational Titles,
23  ("DOT") Appendix C, at 1011 (4th ed. 1991).  It appears that such a
    requirement would exceed an ability to perform only "simple tasks,"
24  consistent with the other doctors' assessments of plaintiff's
    capacity.  Cf. Id. (defining Reasoning Level 1 jobs as requiring
25  ability to understand and carry out "simple one- or two-step
    instructions").  Moreover, the DOT descriptions for each of the three
26  jobs identified by the VE appear to require some degree of reading and
    writing ability, including (for the electronics assembler) a Language
27  Development Level 2, which requires the ability to read assembly
    instructions and write compound and complex sentences. Id. Neither the
28  VE's testimony nor the ALJ's decision addresses this apparent
    discrepancy.

8

perform other work available in the economy.

**E.   PLAINTIFF'S ALLEGED MENTAL RETARDATION AS DEFINED BY THE "LISTINGS"**

To "meet" a listing (at step three), a claimant must meet each characteristic of a listed impairment; to "equal" a listing a claimant must show symptoms, signs, and laboratory findings at least equal in severity and duration to characteristics of a relevant listing, _i.e._, of the listed impairment "most like" the claimant's impairment. _Tackett_, 180 F.3d at 1099; 20 C.F.R. § 404.1526.  If a claimant has multiple impairments, no one of which meets or equals a listing, the collective symptoms, signs, and laboratory findings of all impairments should be evaluated to determine whether, collectively, they meet or equal any listing.  _Tackett_, 180 F.3d at 1099; 20 C.F.R. § 404.1526. "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." _Lewis v. Apfel_, 236 F.3d 503, 512 (9th Cir. 2001), citing _Marcia v. Sullivan_, 900 F.2d 172, 176 (9th Cir. 1990.)

Here, plaintiff argues that he suffers from the listed impairment of mental retardation, which is defined as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.05 (2005). Specifically, plaintiff contends that he meets Listing 12.05(C), which requires a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional

9

1   and significant work-related limitation of function." <u>Id.</u> at §

2   12.05(C).  The record reflects that, during his examination with Dr.

3   Taylor, plaintiff took a Wechsler Adult Intelligence Scale test (Third

4   Edition)("WAIS"), resulting in a Verbal IQ score of 65, a Performance

5   IQ score of 72, and Full Scale IQ score of 65. [AR 190.]  Plaintiff

6   contends that these scores, combined with his "severe" back condition,

7   meets Listing 12.05(C).[4]  Defendant, on the other hand, contends that

8   the ALJ reasonably relied on the opinion of the medical expert to find

9   that plaintiff did not meet or equal a listing and that plaintiff did

10  not meet the burden of producing evidence that his alleged mental

11  impairment began before age 22.

12      The ALJ's decision references plaintiff's IQ scores on Dr.

13  Taylor's tests but does not specifically address the possible

14  applicability of Listing 12.05(C). [AR 15.] The only reference to

15  mental retardation is in a paragraph regarding Dr. Malancharuvil's

16  testimony: "After reviewing the evidence of record, [Dr.

17  Malancharuvil] found no evidence of mental retardation, but the

18  claimant did have a learning disability." [AR 14.] Without further

19  discussion, the ALJ made a general finding that plaintiff "does not

20  have an impairment or combination of impairments which meet or equal

21  Listing level severity." [AR 16.]

22      Under the circumstances here, this conclusory step three

23  determination by the ALJ was legally erroneous, and remand is required

24  because the record is not adequately developed regarding the validity

25

26      [4]  As noted above, the ALJ found that plaintiff had severe
    musculoskeletal impairments at step two of the sequential evaluation.
    [AR 12.]  <u>See</u> <u>Fanning v. Bowen</u>, 827 F.2d 631, 633 (9th Cir.
27  1987)(holding that the second prong of Listing 12.05(C) is satisfied
    when an impairment imposes more than a slight or minimal effect on a
28  claimant's ability to perform basic work activities).

                                    10

1  of plaintiff's IQ score and the onset of plaintiff's alleged mental

2  retardation.  With respect to the validity of plaintiff's score, it

3  appears that the ALJ accepted Dr. Malancharuvil's testimony that,

4  despite Dr. Taylor's IQ test results, which "psychometrically came out

5  that [plaintiff] was at the mildly mentally retarded range," plaintiff

6  has a "functional learning disability" but is "not mentally retarded

7  and he has never been." [AR 67.]  However, Dr. Taylor's report does

8  not clearly or explicitly reject plaintiff's WAIS scores as invalid

9  [AR 190-91.], no other IQ test results are contained in the record,

10  and plaintiff's generally low level of intellectual functioning is

11  uncontroverted.[5]  On this record, a categorical rejection of the

12  validity of the IQ scores recorded by Dr. Taylor - and a summary step

13  three finding apparently made on that basis - are not supported by

14  substantial evidence. See Brown v. Secretary of Health and Human

15

_____

16      [5]  Dr. Taylor made a general observation that plaintiff "gave
   minimally credible effort on the testing." [AR 188.] He also
17  determined that, on mental status examination, plaintiff's
   "intellectual functioning is estimated to be in the borderline range
18  based upon his vocabulary and presentation," and reported an Axis II
   diagnostic impression of "Borderline Intellectual Functioning." [AR
19  189, 192.] However, in reporting the WAIS scores, Dr. Taylor stated
   that the scores indicate that plaintiff "functions in the extremely
20  low range of intelligence in abilities requiring verbal comprehension
   and vocabulary," that plaintiff's "perceptual organizational abilities
21  were assessed to be in the borderline range," and that plaintiff's
   "overall intellectual functioning was assessed to be in the extremely
22  low range." [AR 190-91.] Dr. Taylor's report does not otherwise
   discuss or explain these IQ scores.  In his hearing testimony, Dr.
23  Malancharuvil noted that Dr. Taylor had found plaintiff to be
   "functioning at the next higher level" of "borderline intellectual
24  functioning," and made his own observation that plaintiff "has learned
   several skills that are consistent with a borderline disability" and
25  that "the numbers do not show his actual ability." [AR 67.] Treatment
   records from the San Bernardino County Department of Mental Health
26  reflect that in August and September 2002, plaintiff was assessed as
   having an unspecified learning disability and estimated intellectual
27  functioning in the "below average" (as opposed to mentally retarded)
   category. [AR 242, 250, 257.] It does not appear that any IQ or other
28  psychological testing was performed by the treating doctors.

1    <u>Services</u>, 948 F.2d 268, 269-70 (6th Cir. 1991)(finding ALJ's rejection

2    of validity of claimant's IQ score unsupported by substantial

3    evidence).   <u>Cf</u>. <u>Lewis</u>, 235 F.3d at 514 (finding ALJ's step three

4    finding adequate with respect to Listing 12.05 where ALJ noted that

5    claimant had full scale IQ of 78 and performance IQ of 81, which are

6    scores "well above the maximum IQ of 70 allowed by the listing");

7    <u>Clark v. Apfel</u>, 141 F.3d 1253, 1255 (8th Cir. 1998)(affirming ALJ's

8    determination that claimant did not meet Listing 12:05(C) despite

9    qualifying IQ scores where ALJ rejected credibility of scores on basis

10   of eight specific factors, including claimant's literacy).

11        At the administrative hearing, plaintiff testified that he had

12   received special education in school in Alabama because he had trouble

13   reading and had a "learning disability," although no one told him that

14   he was "mentally retarded." [AR 57-58.] This testimony suggests that

15   IQ or similar diagnostic testing may have been conducted in connection

16   with plaintiff's schooling.   If so, the results of such tests could

17   address both the issue of the validity of plaintiff's more recent IQ

18   score and the question of whether any intellectual impairment began

19   before age 22.   On remand, an effort should be made to obtain earlier

20   test results, if available, and further step three findings should be

21   made as appropriate.[6]

22

23        [6]   The absence of an earlier test may not be dispositive.
     Although the Ninth Circuit has not directly addressed this issue,
24   other circuits have held that the absence of an IQ test during a
     claimant's developmental years does not necessarily preclude a finding
25   of mental retardation before age 22, based on the presumption that a
     person's IQ remains stable over time.   <u>See</u>, e.g. <u>Hodges v. Barnhart</u>,
26   276 F.3d 1265, 1268-69 (11th Cir. 2001); <u>Luckey v. U.S. Dept. Of
     Health & Human Services</u>, 890 F.2d 666, 668 (4th Cir. 1989); <u>see</u> <u>also</u>
27   <u>Markle v. Barnhart</u>, 324 F.3d 182, 188-89 (3rd Cir. 2003)(remanding for
     further development of record and appropriate finding regarding onset
28   of mental retardation before age 22).

1          **F.   THE ALJ'S CONSIDERATION OF THE TREATING PHYSICIAN'S OPINIONS**

2          " 'An administrative law judge is not bound by the uncontroverted

3    opinions of the claimant's physicians on the ultimate issue of

4    disability, but he cannot reject them without presenting clear and

5    convincing reasons for doing so.'" <u>Reddick</u>, 157 F.3d at 725 (quoting

6    <u>Matthews v. Shalala</u>, 10 F.3d at 678, 680 (9th Cir. 1984))(quoting

7    <u>Montijo v. Secretary of Health & Human Servs</u>., 729 F.2d 599, 601 (9th

8    Cir. 1984)); <u>see</u> <u>also</u> <u>Lester</u>, 81 F.3d at 830.  Even if a treating

9    physician's opinion on disability is controverted, it can be rejected

10   only with specific and legitimate reasons supported by substantial

11   evidence in the record.  <u>Lester</u>, 81 F.3d at 830.

12         Here, the record shows that plaintiff received treatment from the

13   Westside Family Health Center from July to November 2002 for his back

14   pain and erectile dysfunction. [AR 261-273.]  Notably, a medical

15   report completed on July 18, 2002, stated that plaintiff would be

16   "incapacitated" from work until November 1, 2002, due to his "lumbar

17   strain." [AR 273.]  In assessing plaintiff's physical impairments,

18   however, the ALJ did not acknowledge this statement of incapacity but

19   instead, discussed treatment that plaintiff received from Dr. Jack

20   Piasecki approximately one year earlier, from April to September 2001.

21   [AR 154, 167.]  The ALJ noted Dr. Piasecki's numerous functional

22   assessments and concluded they were compatible with her own

23   determination that plaintiff had the RFC to perform a narrow range of

24   light work. [AR 13.][7]

25         The ALJ's conclusion that plaintiff was not disabled based on Dr.

26   _____

27         [7]   The ALJ also noted that Dr. Piasecki found plaintiff "only
     temporarily disabled until May 1, 2001." [AR 13.]  In fact, the record
     shows that Dr. Piasecki extended plaintiff's period of disability
28   until September 17, 2001. [AR 160.]

                                      13

Piasecki's treatment records, absent any discussion or apparent consideration of the treatment plaintiff received and the assessment of incapacity made one year later at the Westside Family Health Center, did not satisfy the Ninth Circuit requirement that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record" to discount a treating medical opinion. Lester, 81 F.3d at 830; see also Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)(substantial evidence does not support ALJ's rejection of treating physician's opinion when he entirely ignores medical reports and fails to mention them in his opinion).  This error provides a further basis for reversal of the decision denying benefits in this case.[8]

### G.    REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court.  Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000).  Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility).

---

[8]  Defendant posits that the "incapacity" opinion plaintiff references should be discounted because it refers only to plaintiff's inability to perform him past work without addressing his ability to perform other work and because the only functional limitation noted is an inability to lift more than twenty-five pounds, which is not inconsistent with the ALJ's RFC assessment. [JS 7.] However, while these may be reasons why the treating doctor's opinion would not establish that plaintiff is disabled for social security purposes, they were not discussed by the ALJ; and defendant's articulation of them now does not eliminate the ALJ's legal error of wholly failing to consider the treatment records in question, particularly in light of their possible significance as documentation of the duration and seriousness of plaintiff's back pain.

14

1    However, where there are outstanding issues that must be resolved

2    before a determination can be made, and it is not clear from the

3    record that the ALJ would be required to find the claimant disabled if

4    all the evidence were properly evaluated, remand is appropriate.   <u>Id</u>.

5    Here, as discussed above, the record is not fully developed, and there

6    are outstanding issues to be resolved before a disability

7    determination can be made in plaintiff's case.[9]   Accordingly, the

8    action is remanded for further proceedings consistent with this

9    decision.

10                          **VI.   <u>ORDERS</u>**

11       Accordingly, **IT IS ORDERED** that:

12       1.    The decision of the Commissioner is **REVERSED**.

13       2.    This action is **REMANDED** to defendant, pursuant to Sentence

14   Four of 42 U.S.C. § 405(g), for further proceedings.

15       3.    The Clerk of the Court shall serve this Decision and Order

16   and the Judgment herein on all parties or counsel.

17

18   DATED: November  18  , 2005

19                             _/s/_____
                                     CARLA M. WOEHRLE
20                             United States Magistrate Judge

21   _____

22       [9]   In this regard, the court has considered plaintiff's argument
     that the ALJ improperly assessed the credibility of plaintiff's
23   testimony regarding his subjective symptoms and defendant's counter-
     argument that the ALJ gave legitimate reasons for finding plaintiff's
24   symptoms not to be as severe as alleged. [JS 14-17, 20-22.] However,
     resolution of this issue would not affect the disposition of this case
25   because, even if plaintiff's hearing testimony as a whole were
     credited, it would not be clear that - in the absence of a finding of
26   listing level mental impairment - plaintiff would be unable to perform
     any work available in the economy.  Accordingly, remand for further
27   proceedings is required. <u>Cf</u>. <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593-95
     (9th Cir. 2004)(holding that where improperly rejected evidence is
28   credited and record is clear that claimant would be unable to perform
     gainful work, remand for award of benefits is warranted).

                                  15